UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KUSHAWN S. MILES,

        Plaintiff,

                                Case No. 2:23-cv-40

v.

                                Hon. Hala Y. Jarbou

UNKNOWN SURETY, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Surety, the Michigan Department of Corrections (MDOC), Corrigan, URF Mental Health Unit, Washington, Bush, and Russell. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against Defendants Simpson, Storey, Chauncey, and Olson. Plaintiff's First Amendment retaliation claims against Defendants Storey, Simpson, Chauncey, and Olson remain in the case.

**Discussion**

## I. Factual Allegations

Plaintiff Kushawn S. Miles is currently incarcerated by the MDOC at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Unknown Surety (who Plaintiff claims represents all public officers and state employees); the MDOC; Corrections Officers Unknown Simpson, Unknown Chauncey, and Unknown Storey; Warden James Corrigan; URF Mental Health Unit; T. Olson, LLMSW; MDOC Director Heidi Washington; Deputy Director Jeremy Bush; and Manager Richard Russell.

Plaintiff alleges that on October 18, 2022, he filed grievances against the male officers who worked third shift on the Marquette Unit at URF for playing music and movies at a high volume in the unit every night between 2:30 a.m. and 5:30 a.m., which exacerbated Plaintiff's mental illness. Plaintiff states that Defendants Storey, Simpson, and Chauncey retaliated against Plaintiff and harassed him, so Plaintiff filed a complaint on them. Plaintiff was later pulled out of his cell by Lieutenant Koskela (not a party) to discuss his grievances and complaints. Later in the week, Defendants Chauncey, Storey, and Simpson wrote three false class III misconducts on Plaintiff to retaliate against him. All three tickets were thrown out by Corrections Officer Lippenon (not a party) after Lippenon reviewed the base camera, which showed that Plaintiff never came out of his cell during the pertinent time.

Plaintiff filed another grievance against third shift officers on November 7, 2022, regarding the loud movies that woke him up in the night, and once Defendants Chauncey, Simpson, and Storey heard of the grievance, Plaintiff alleges they took turns writing false class III misconducts on Plaintiff for excessive noise, all of which were thrown out or dismissed. Defendants Chauncey,

Simpson, and Storey were infuriated and threatened to break or confiscate all of Plaintiff's appliances if he did not stop filing grievances.

On November 30, 2022, Plaintiff alleges Defendants Chauncey and Simpson wrote another false class III misconduct on Plaintiff for excessive noise. The misconduct was once again thrown out. Plaintiff then filed a complaint with the Warden.

On December 23, 2022, Plaintiff alleges Defendant Chauncey was working overtime from 2:00 p.m. to 10:00 p.m. and intercepted Plaintiff returning from religious services. Defendant Chauncey told Plaintiff to get his affairs in order because he was going to have Plaintiff put in the hole on third shift because of the trouble Plaintiff had caused the third shift officers. At around 10:00p.m., Defendants Simpson and Storey came on shift. Defendants Chauncey, Simpson, and Storey then called Plaintiff out and promised to make his life miserable if he continued to write grievances. Defendants Chauncey, Simpson, and Storey told Plaintiff that they would have him placed in the hole and starve him to death if he did not promise to stop writing grievances and that they had been killing inmates at URF for a long time. Plaintiff stated that he would be filing a lawsuit and returned to his cell and went to sleep. At 11:30 p.m., Plaintiff was awakened by Lieutenant Koskela, who said that he had to take Plaintiff to the hole for threatening behavior towards Defendant Simpson. Plaintiff was placed in segregation.

On December 23, 2022, Plaintiff was reviewed on a class I misconduct for threatening behavior by Lieutenant Koskela, who recommended that Plaintiff receive a "responsibility determination" from the mental health team. (ECF No. 1, PageID.6.) On December 27, 2022, Hearing Investigator also referred Plaintiff to mental health for a "responsibility determination." (*Id.*) Subsequently, Defendant Olson took Plaintiff's screening assessment form away from Plaintiff's assigned case manager and submitted a false responsibility determination in support of

3

Defendants Storey, Simpson, and Chauncey without ever speaking to Plaintiff or evaluating his state of mind. Plaintiff states that Defendant Olson had previously worked on third shift with these Defendants and had personal relationships with them.

Plaintiff discovered that the determination had been done by Defendant Olson on January 6, 2023, when he received his appeal packet. Plaintiff states that he stopped Defendant Olson while she was making rounds and asked her why she had not recused herself from his case. Defendant Olson told Plaintiff that she remembered him and his grievances and that she knew they would come back to haunt Plaintiff one day. Defendant Olson also told Plaintiff that she was in a position to make sure his mental disability was not used to get him out of the misconduct ticket. Plaintiff stated that he planned to file a grievance on Defendant Olson, but she indicated that she did not care because she would be believed over Plaintiff. Defendant Olson told Plaintiff that she did not like "snitches" or "legal beagles" and did not care how mentally disabled Plaintiff was, she was going to look out for her own. (*Id.*) Defendant Olson also stated that Plaintiff would get what he deserved and that maybe he would learn not to file grievances and complaints against staff. (*Id.*) Defendant Olson also told Plaintiff that he was not the first prisoner she had "lied on," and that he would not be the last because the "gray code" came before everything else. (*Id.* at PageID.7.)

Plaintiff states that Defendants Simpson, Chauncey, Storey, Corrigan, and Olson subjected him to a "campaign [of] harassment" and failed to intervene to remedy the conduct of employees and officers at URF. (*Id.*) Plaintiff contends that there is a systemic custom of strict adherence to the "gray code" at URF. (*Id.*) Plaintiff also alleges that the conduct of Defendants Simpson, Chauncey, and Storey between October and December of 2022, in subjecting Plaintiff to loud music and inappropriate movies every night between 2:00 a.m. and 5:30 a.m. caused Plaintiff to suffer increased anxiety, insomnia, and mood swings in violation of the Eighth Amendment.

Plaintiff states that he filed multiple complaints and grievances, but nothing was done to correct the situation.

Plaintiff states that there were procedural defects in his major misconduct hearing and that Hearing Officer Sheila O'Brien (not a party) improperly excluded a witness, deprived Plaintiff of his right to counsel, informed him that videotape had been taped over because he did not request it in a timely manner, denied Plaintiff an unbiased responsibility determination, and exceeded her authority when she sentenced Plaintiff to 10 days' detention in segregation in violation of Policy Directive 03.03.105, containing special provisions for prisoners with a mental disability. Plaintiff also complains that the Hearing Investigator failed to obtain statements from Plaintiff's neighbors.

Moreover, Plaintiff complains that the misconduct hearing process is intrinsically unfair because the MDOC keeps statistics of individual rates of not guilty findings and dismissals by individual hearing officers, who are subject to a performance review if their rate is higher than average. Plaintiff states that this serves to coerce individual hearing officers into finding prisoners guilty. Plaintiff also complains that the statements of MDOC employees are automatically given more credibility than those of prisoners.

Finally, Plaintiff claims that Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit failed to properly supervise employees at URF or to intervene to protect Plaintiff's constitutional rights despite widespread patterns of harassment, retaliation, excessive force, and abuse of the misconduct system at URF.

Plaintiff indicates that he is asserting the following claims for relief: (1) First Amendment retaliation claims against Defendants Storey, Simpson, Chauncey, and Olson; (2) Eighth Amendment claims for harassment against Defendants Simpson, Chauncey, Storey, Corrigan, and Olson; (3) due process claims against Defendants Washington, Bush, and Russell for instituting

and maintaining a biased and unfair misconduct process; and (4) claims under 42 U.S.C. § 1986 against Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit for failing "to prevent violations and/or intervene.". Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Surety

Plaintiff fails to state a claim against Defendant Unknown Surety. Nothing in Plaintiff's complaint supports a finding that Unknown Surety or a surety bond is a person that can be sued under § 1983. Moreover, the Court recognizes that 28 U.S.C. § 1352 provides that "[t]he district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States." *See* 28 U.S.C. § 1352. Plaintiff's complaint, however, is devoid of any facts from which the Court could infer that "Defendants' performance bonds—if they exist at all—were executed under 'any law of the United States.'" *See Moore v. Whitmer*, No. 1:21-cv-117, 2021 WL 5194807, at *4 (W.D. Mich. Nov. 9, 2021), *aff'd*, 2022 WL 18862075 (6th Cir. Aug. 12, 2022).

### B. Defendant MDOC

Likewise, Plaintiff's claims against Defendant MDOC are properly dismissed because Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has

not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

    **C.    Eighth Amendment Claims Against Defendants Simpson, Chauncey, Storey, Corrigan, and Olson**

As explained below, Plaintiff's Eighth Amendment claims against Defendants Simpson, Chauncey, Storey, Corrigan, and Olson for harassment are subject to dismissal. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

8

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff claims that when he complained about unknown third shift officers playing music and inappropriate movies at a high volume when he was trying to sleep, Defendants Simpson, Chauncey, Storey, Corrigan, and Olson responded by writing false misconduct tickets on him and threatening to send him to segregation and to deprive him of food if he did not stop filing grievances. Plaintiff states that he was actually placed in segregation after he received false misconduct tickets. Plaintiff also asserts that between October and December of 2022, Defendants Simpson, Chauncey, and Storey played loud music and movies every night between 2:00 a.m. and 5:30 a.m.

Plaintiff fails to allege facts that rise to the level of an Eighth Amendment violation. With respect to Plaintiff's claim that he was placed in segregation, the Court notes that placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

In addition, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (discussing that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (concluding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL

9

205604, at *1 (6th Cir. Apr. 24, 1997) (finding that verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Plaintiff also contends that between October and December of 2022, Defendants Simpson, Chauncey, and Storey played loud music and inappropriate movies every night between 2:00 a.m. and 5:30 a.m.

> "There is no doubt that '[e]xcessive noise in a prison can state a valid Eighth Amendment claim.'" *Kimball v. Bureau of Prisons*, No. 4:13CV225, 2013 WL 3098900, at *8 (N.D. Ohio June 19, 2013) (quoting *Green v. Strack*, No. 94–17214, 1995 WL 341544, at *1 (9th Cir. June 8, 1995)). However, "high levels of noise are not, without more, violations of the Eighth Amendment." *Grubbs v. Bradley,* 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982) (citation omitted).

*Atkins v. Savoie*, No. 2:22-cv-203, 2022 WL 17484366, at *5 (W.D. Mich. Dec. 7, 2022).

In addressing a claim of excessive noise by a prisoner, this Court recently noted:

10

> On an objective level, cases finding an Eighth Amendment violation based on excessive noise have typically "involved incessant noise throughout the day and night, *which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss.*" *Kimball*, 2013 WL 3098900, at *8 (emphasis added) (citing *Sterling v. Smith*, No. CV606–103, 2007 WL 781274, at *3 (S.D. Ga. Mar. 8, 2007); *Antonelli v. Sheehan,* 81 F.3d 1422, 1433 (7th Cir. 1996); *Toussain v. McCarthy,* 597 F. Supp. 1388, 1410 (N.D. Cal. 1984), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)). Although Plaintiff alleges that he was not able to get four hours of uninterrupted sleep each time that Plaintiff was in the Steamboat Unit, Plaintiff does not allege that the banging on the cell doors during security counts was so excessive or pervasive as to pose an objectively serious risk of hearing loss or pain. Other than Plaintiff's own conclusion that the banging and beeping noises were "extremely loud," Plaintiff alleges no facts that would demonstrate that the noise levels were objectively "intolerable for prison confinement," *Rhodes*, 452 U.S. at 348. Indeed, noise caused by banging on cell doors—particularly where, as here, it is done in relation to inmate security—is not an atypical or significant hardship in relation to the ordinary incidents of prison life. *Kimball*, 2013 WL 3098900, at *8 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).
>
> Yet even assuming, without deciding, that Plaintiff could demonstrate an objective deprivation, the inquiry does not end there. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837. Plaintiff must still plead facts to plausibly suggest that Defendants acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

*Id.*

Plaintiff in this case fails to allege that the noise level was so excessive as to pose an objectively serious risk of hearing loss or that it was objectively intolerable for prison confinement. *Id.* Being subjected to a few hours of loud noises that are annoying or inconvenient fails to support an actionable violation of the Eighth Amendment. *Finley v. Salmi*, No. 2:17-CV-149, 2019 WL 7602174, at *6 (W.D. Mich. Aug. 29, 2019), *report and recommendation adopted,* No. 2:17-149, 2019 WL 4941960 (W.D. Mich. Oct. 8, 2019), *aff'd,* 827 F. App'x 575 (6th Cir. 2020). Nor does Plaintiff allege facts showing that Defendants acted or failed to act with the knowledge of a substantial risk of harm to Plaintiff. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

11

### D. Due Process claims against Defendants Washington, Bush, and Russell

Plaintiff's due process claims against Defendants Washington, Bush, and Russell related to the major misconduct hearing process in the MDOC fail to state a claim. Plaintiff states that he was sentenced to 10 days in detention as a result of his misconduct conviction. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. Plaintiff was convicted in 1993 and was sentenced to life in prison in 1994. *See*

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=237011 (last visited Aug. 30, 2023). Therefore, a major misconduct conviction would have no effect on the duration of Plaintiff's sentence.

Moreover, even if Plaintiff were serving an indeterminate sentence less than life, in *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Building on these rulings, in *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time,[2] a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. *See also Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *report and recommendation adopted*, 2011 WL 5491196 (E.D. Mich. Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff states that he was sentenced to 10 days' detention in segregation as a result of his class I misconduct conviction. Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their

---

[2] For some crimes committed after December 15, 1998, and all crimes committed after December 15, 2000, Michigan prisoners are "penalized" with "disciplinary time" under a statute that abolished the disciplinary credit system. Mich. Comp. Laws § 800.34.

13

incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in segregation for 10 days is far less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant. Thus, Plaintiff's confinement in segregation for 10 days did not trigger a right to due process.

### E. 42 U.S.C. § 1986 Claims Against Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit

Plaintiff appears to be asserting that Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit violated his rights under 42 U.S.C. § 1986. Liberally construing Plaintiff's complaint, it appears he is also attempting to assert §§ 1983 and 1985 claims against these Defendants.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Similarly, to state a claim for conspiracy under § 1985, a plaintiff must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)).

The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at 839. Under both § 1983 and § 1985, a plaintiff must plead with particularity, as vague and conclusory allegations

15

unsupported by material facts are insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete occurrences over a period of time involving numerous individual prison staff. He appears to rely entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). In light of the far more likely possibility that the various incidents occurring over the pertinent time period were unrelated, Plaintiff fails to state a plausible claim of conspiracy under either Section 1983 or Section 1985.

Plaintiff's claim under § 1986 fails for the same reason as his § 1985 claim. Section 1986 provides as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person with reasonable diligence could have prevented . . . .

42 U.S.C. § 1986. The cause of action under § 1986, by its terms, is premised on the violation of § 1985. The cause of action under § 1986, by its terms, is premised on the violation of § 1985. Because Plaintiff fails to state a claim under § 1985, his claim under § 1986 fails as well. *See Bartell*, 215 F.3d at 560 (explaining that § 1986 is derivative and conditioned on establishing a § 1985 violation); *Browder*, 630 F.2d at 1154 (same).

### F.     Respondeat superior

Moreover, to the extent that Plaintiff is asserting that Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit are responsible for the conduct of subordinates under a theory of respondeat superior or vicarious liability, such claims lack merit. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead

17

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, any claims based on the failure to supervise by Defendants Washington, Bush, Russell, Corrigan, Olson, and URF Mental Health Unit are properly dismissed.

18

### G.     Retaliation claims against Defendants Storey, Simpson, Chauncey, and Olson

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In his complaint, Plaintiff claims that Defendants Storey, Simpson, and Chauncey retaliated against him for filing grievances by writing false misconduct tickets on him and that Defendant Olson retaliated against him by submitting a false responsibility determination in support of Defendants Storey, Simpson, and Chauncey. Plaintiff alleges that each of these Defendants made comments indicating that they were taking those actions because of his use of the grievance system. The Court concludes that Plaintiff has alleged sufficient facts to support his retaliation claim against Defendants Storey, Simpson, Chauncey, and Olson.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Surety, the MDOC, Corrigan, URF Mental Health Unit, Washington, Bush, and Russell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against Defendants Simpson, Storey, Chauncey, and Olson.

Plaintiff's First Amendment retaliation claims against Defendants Storey, Simpson, Chauncey, and Olson remain in the case.

An order consistent with this opinion will be entered.


Dated: September 13, 2023                /s/ Hala Y. Jarbou
                                         HALA Y. JARBOU
                                         CHIEF UNITED STATES DISTRICT JUDGE